# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**REBECCA L. THAYER,**

      **Plaintiff,**              Civil Action No. 16-cv-14009

      v.                           Magistrate Judge Mona K. Majzoub

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [16] AND
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17]

Under 42 U.S.C. § 405(g), Plaintiff Rebecca L. Thayer seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 16) and Defendant's Motion for Summary Judgment (docket no. 17). With consent of the parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 15.) The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

## I.    PROCEDURAL HISTORY

On March 11, 2014, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that she had been disabled since February 8, 2012. (TR 18.) The Social Security Administration initially denied Plaintiff's claims on May 28, 2014. (*Id.*) On October 5, 2015, Plaintiff appeared with a representative and testified at a hearing before

Administrative Law Judge (ALJ) Donald G. D'Amato. (*Id.*) On November 23, 2015, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 18-30.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on September 16, 2016. (TR 1.) On November 11, 2016, Plaintiff commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 16; docket no. 17.)

## II. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of the relevant medical records. (Docket no. 16, pp. 5-7.) The ALJ summarized Plaintiff's medical records (TR 24-28), and Defendant relied on the ALJ's summary (docket no. 17, p. 4). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this opinion.

## III. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff did not engage in substantial gainful activity since February 8, 2012, the alleged onset date. (TR 20.) In addition, the ALJ found that Plaintiff had the following severe impairments: "Degenerative disc disease of the lumbar and cervical spines; degenerative arthritis of the knees; diabetes mellitus; chronic obstructive pulmonary disease ("COPD"); obesity; post-traumatic stress disorder ("PTSD"); and major depressive disorder." (TR 21.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*) In addition, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following exceptions:

- Plaintiff requires work that is unskilled with 1-, 2-, or 3-step instructions, and such work should be non-fast-rate production, which is defined as work that does not include conveyor belt or assembly line work;

- Plaintiff cannot function as a member of a discrete team and contact with co-workers and supervisors should be largely superficial; she can have no direct interactive contact with the public;

- Plaintiff requires a low-stress environment, defined as having only occasional changes in work setting;

- Plaintiff can lift and/or carry 5 pounds frequently and 10 pounds occasionally;

- Plaintiff can stand and/or walk with normal breaks for a total of 2 hours in an 8-hour workday, but she can do so for only 15 minutes at one time;

- Plaintiff can sit with normal breaks for a total of 6 hours in an 8-hour workday, but she can do so for only 30 minutes at one time;

- Plaintiff can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for no more than 2/3 of an 8-hour workday;

- Plaintiff can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for no more than 2/3 of an 8-hour workday;

- Plaintiff needs to avoid hazards in the workplace such as moving machinery and unprotected heights;

- Job responsibilities should not include the use of hand-held power or vibrating tools;

- Plaintiff is restricted to a relatively clean work environment, which means stable temperatures, stable humidity, and good ventilation that allows her to avoid concentrated exposure to dust, fumes, gases, odors, and other pulmonary irritants;

- Plaintiff can occasionally balance, stoop, crouch, kneel, crawl, and climb stairs with handrails, but she needs to avoid climbing ladders, scaffolds and ropes.

(TR 22-23.) On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified Plaintiff is capable of performing occupations that exist in significant numbers in the national economy, including inspector, sorter, and addressing clerk.

(TR 29.) Consequently, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time since February 8, 2012, the alleged onset date. (TR 30.)

## IV. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which

the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

B.     **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

C.  Analysis

Plaintiff contends that the ALJ erred by failing to properly evaluate the medical source statement of Dr. Daniel Healy III, Plaintiff's treating psychiatrist. In particular, Plaintiff asserts that the ALJ's decision fails to provide "good reasons" for rejecting Dr. Healy's medical source opinion. (Docket no. 16, p. 13.)

Under the treating physician rule, the Commissioner mandates that the ALJ "will" give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (2004)).

The ALJ must also "give good reasons in [his] notice of determination or decision for the weight [given to a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Such good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights, which is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has

6

deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that he is not." *Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011) (citing *Wilson*, 378 F.3d at 544).

The ALJ summarized Dr. Healy's medical source statement, in which Dr. Healy opined that several workplace activities were "totally precluded on a sustained basis and would result in failing after even a short duration of 5 to 15 minutes." (TR 26.) The ALJ also noted that Dr. Healy estimated that Plaintiff "would likely be absent from work as a result of her impairments or treatment more than 4 days per month." (*Id.*) Ultimately, however, the ALJ gave "little weight" to Dr. Healy's opinion because "it generally lack[ed] consistency with the evidence of record, which show[ed] that [Plaintiff's] condition significantly improved with treatment even when [Plaintiff] was performing a lot of work as a caretaker for her fiancé and several of his family members." (TR 28.) In support, the ALJ referred to exhibits B4F, B7F, B9F, and B10F, which comprise Plaintiff's records from the Washtenaw Community Health Organization from February of 2012 through September of 2015, including Dr. Healy's treatment notes. (*Id.*)

Earlier in his decision, the ALJ summarized these records, noting that Plaintiff started treatment at Washtenaw Community Health Organization in February of 2012, at which time she was diagnosed as having Major Depressive Disorder and PTSD. (TR 24.) Records from March of 2012 indicate that Plaintiff felt "down" and displayed an "anxious" manner. (TR 464-65.) Similarly, in May of 2012, Plaintiff "still fe[lt] down" and reported her "mood [as] 3-4/10" with "episodes of irritability" and "several nights where [she was] awake until 3-4 am." (TR 460.) In July of 2012, Plaintiff reported that she stopped taking medication that she was unable to afford, and that "[s]ince discontinuing her medications, she reports poor mood, nightmares, poor sleep and lack of energy." (TR 455.)

7

The ALJ emphasized that Plaintiff's condition began to improve in August of 2012, when Plaintiff "reported overall improvement in mood and energy on Cymbalta and [that] Trazadone was helping with intermittent sleep difficulty." (TR 24; TR 450.) Plaintiff's mental-health records suggest that from early 2013 through the summer of 2015, Plaintiff showed significant improvement and responded positively to medication. Dr. Healy's records show that on January 25, 2013, Plaintiff "continue[d] to be down after hearing that her fiancé may be terminally ill" but she was "willing to continue to work hard on feeling better" and "agreed to practice sleep hygiene, exercise, get in touch with her daughter, and look for a daytime job." (TR 605.) In June of 2013, Plaintiff "continue[d] to have stress" due to "caring for her fiancé and his mother now," but was "pleased because she [was] being paid by Medicare to care for them." (TR 598.) By August of 2013, Plaintiff continued "to be [the] primary caretaker for [her] fiancé and his mother," but her mood was "pretty good." (TR 594-95.) In March of 2014, Plaintiff reported that "things are going quite well," and her daughter expressed that Plaintiff was "doing much better than what [the daughter] remember[ed] from two years ago." (TR 573.) After this visit, Dr. Healy reported that Plaintiff "has shown substantial improvement with a combination of medication and therapy." (TR 576.) In May of 2014, Plaintiff had "fair energy and her mood ha[d] been particularly good." (TR 963.) In August of 2014, Plaintiff "continue[d] to show progress with her anger/irritability and emotional regulation" and her "[m]ood remain[ed] stable" (TR 970.) In April of 2015, Plaintiff reported significant "environmental stressors which exacerbate her mental health" such as "having lots of people in [her] apartment," and social worker Jeff Beckley opined that Plaintiff "continues to require services with CSTS [i.e., Washtenaw County Community Support and Treatment Services] to address her diagnosis." (TR 948; TR 983.) However, by June of 2015, Plaintiff was "really starting to feel better," partly

because she "moved into new apartment and [was] feeling like there's not as much stress." (TR 985.) As of that visit, Plaintiff's manner was "cooperative," her affect was "euthymic," and her thought processes were "logical." (TR 986.)

On review of these records, the Court finds that the ALJ properly addressed Dr. Healy's opinion and stated "good reasons" in support of his decision to give "limited weight" thereto. The ALJ emphasized that Dr. Healy's RFC assessment conflicted with the substantial body of Plaintiff's treatment records, including Dr. Healy's own treatment notes. As set forth above, the restrictions prescribed by Dr. Healy in September of 2015 simply fail to conform to the general trend of improvement and absence of functional limitations portrayed by Dr. Healy's records from 2012 through 2015.

Secondarily, Plaintiff objects to the ALJ's decision on numerous technical grounds, including alleging that the ALJ failed to apply the "balancing factors under 20 CFR 404.1527(c)(2), 416.927(c)(2) and SSR 96-5p," including length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion afforded by medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating source. (Docket no. 16, p. 14.) Although the ALJ could have been more thorough in this regard, an exhaustive factor-by-factor analysis" is not required. *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011). The ALJ's decision is be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Cole*, 661 F.3d at 937–38. Whether framed as a procedural or substantive issue, the ALJ's RFC assessment is supported by substantial evidence, and is "not subject to reversal merely because substantial

evidence exists in the record to support a different conclusion." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

## V. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [16] is **DENIED**, and Defendant's Motion for Summary Judgment [17] is **GRANTED**.

Dated: January 16, 2018   s/ Mona K. Majzoub
　　　　　　　　　　　　　MONA K. MAJZOUB
　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: January 16, 2018   s/ Leanne Hosking
　　　　　　　　　　　　　Case Manager